LORRE ANN KANTZ
9790 US Hwy 50
Stagecoach, NV 89429
Telephone: (775) 315-9885
Email: lorrekantz@gmail.com

*Pro Se Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LORRE ANN KANTZ | Case No.: 3:17-cv-00244-MMD-WGC |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATION** |
| BRANDON SOUKUP, an individual, SAMUEL BLYVEIS, an individual, ALVIN MCNEIL, an individual; and, LYON COUNTY, a political subdivision of the State of Nevada. | **(Jury Trial Demanded)** |
| Defendant(s). | |

Plaintiff Lorre Ann Kantz, In Pro Se, complains and alleges as follows:

### GENERAL ALLEGATIONS

#### Jurisdiction and Venue

1. This Complaint is brought pursuant to 42 U.S.C. § 1983 for a violation of the Plaintiff's Civil Rights.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

3. Venue is proper in this district because all of the parties are residents of Lyon County, Nevada, and the events forming the basis of the Complaint all occurred in Lyon County, Nevada.

#### Parties

4. Plaintiff Lorre Ann Kantz ('Lorre") is a citizen of Stagecoach, Lyon County, Nevada.

1

5. Defendant BRANDON SOUKUP is a Deputy Sheriff employed by Lyon County, Nevada. He is sued in both his official and individual capacities.

6. Defendant SAMUEL BLYVEIS was a Deputy Sheriff employed by Lyon County, Nevada. He is sued in his official and individual capacities.

7. Defendant ALVIN MCNEIL is the Sheriff of Lyon County. He is sued in his official capacity on the § 1983 claims and in both his official and individual capacities on the state law claims.

8. LYON COUNTY is a political subdivision of the State of Nevada and is the employer of Defendants SOUKUP, BLYVEIS and MCNEIL.

9. At all times relevant to this Complaint, all Defendants were acting under color of state law.

### General Allegations

10. Plaintiff Lorre Ann Kantz was not drinking and driving on April 24, 2015.

11. Lorre complains that her blood was forcibly seized without legal justification *after* Deputy Brandon Soukup ("Soukup") learned Lorre had not been drinking and driving whatsoever.

12. At approximately 22:21, Deputies Soukup and Samuel Blyveis ("Blyveis) were dispatched to a possible intoxicated driver at the strip mall Lorre owned in Stagecoach, Nevada.

13. Two of the Tenants at the mall called Dispatch and later wrote two independent witness statements.

14. Both of the tenants were at Slydin Clydes Tavern/Bar where William Allen Scott ("Allen") was the bartender and Timothy Schubert ("Tim") was a patron.

15. They became aware of Lorre in the driveway when a customer came in to tell Allen of

"someone passed out in their car in the parking lot."

16. While Allen went out to the car, Tim called dispatch and said, "some lady is passed out drunk in the parking lot."

17. Earlier, Lorre was working at her restaurant when her husband came by to help her close. Lorre is married to Lyon County Sheriff's Deputy Greg Kantz ("Greg"). He was off duty at all times relevant to this Complaint.

18. They agreed to meet at the "dog statue" that is located on the West side of the strip mall. This area is a separate parcel of land and is not accessible to the public.

19. Lorre left the restaurant and drove her Subaru from the back of the mall to the dog statue where she parked to water trees. Once parked, Lorre consumed alcohol while watering.

20. The back of the mall is not property that is accessible to the public. It is fenced in with locked gates and a rock wall lining Slydin Clyde's Tavern/Bar on the East end of the mall.

21. Greg walked over to meet Lorre and became upset that she had been drinking. They began to argue. Lorre got in the passenger seat as Greg got in the drivers seat of the Subaru.

22. Greg drove from the dog statue to the entrance of the mall where he abruptly stopped and turned off the car and kept the keys. He left Lorre there and walked back to the restaurant. After about thirty minutes, Greg returned to the car to find Lorre in the drivers seat.

23. Defendant(s) Soukup and Blyveis arrived on scene at approximately 22:29. Greg was standing beside the vehicle and Lorre was drunk in the drivers seat.

24. Soukup contacted Lorre who refused to answer questions. He "recognized that she did not have keys and the vehicle was turned off."

25. Here, Soukup had his own first hand information to dispel the report of a possible intoxicated driver. Both Deputies did not see a crime being committed.

26. Lorre refused to exit her car to perform SFST's – Standardized Field Sobriety Tests. As a result, Soukup and Blyveis forcibly removed Lorre from her parked vehicle.

27. After Lorre was arrested, Blyveis went to collect witness statements while Soukup called his Supervisor, Sergeant Peter Baltes ("Baltes"). He informed him that Lorre was arrested for "Obstruction," in handcuffs and placed in the back of his patrol car.

28. Baltes was misinformed of the essential facts. That Lorre said she had not been driving. That Greg said he had driven. That Soukup had never spoke to witnesses or read their written witness statements because they were not yet collected. That the vehicle was found parked and turned off. That Lorre did not have car keys.

29. In fact, Soukup mislead Baltes in saying, "all the statements say that she drove like 100 feet on private property, behind the building, you couldn't get there."

30. If "you couldn't get there," then it is true that the entirety of the business is not accessible to the public.

31. Soukup told Baltes that he was unsure whether or not to arrest Lorre for Driving Under the Influence ("DUI"). Instead, he drove her to the Lyon County Sheriff's Office Silver Springs Substation.

32. Here, Soukup read Lorre Miranda rights while she was still in the back of his patrol car.

33. Without making sense, Blyveis yelled, "Lorre, you're not under arrest. Clearly, the deputies acted apart from each other with miscommunications.

34. Additionally, Blyveis acted with malicious intent to harm Lorre with his fabricated Supplemental Sheriff's Deputy Report. In his narrative, he made a deliberate ad-lib statement: "Greg then added that he heard Lorre was drunk and making a scene at Slydin Clyde's Tavern and went to get her. Greg then told me that as they were leaving, Lorre became very mad and requested Greg pull over."

35. To the contrary, Allen was the bartender and reported to Dispatch "she ain't got drunk in the bar ... she hasn't been in the bar at all."

36. Allen and Tim reported the same information to dispatch that was consistent with their independent written statements, whereas, they did not identify anyone driving the Subaru.

///

///

37. After being read Miranda rights, Soukup read Lorre the Implied Consent Admonishment Lorre refused questions and asked for an attorney.

38. Soukup proceeded further with an Application And Affidavit For Search Warrant. The telephonic warrant was submitted to the Honorable Judge Cheri Emm-Smith from the Yerington Municipal Court located in Yerington, Nevada.

39. Soukup read Lorre the search warrant. After she refused to give her blood, Soukup handcuffed her again and drove her another 27-30 miles to the Lyon County Jail in Yerington.

40. At the jail, Lorre was restrained in a chair while being punctured with a needle numerous times leaving bruises and ruptured veins.

41. Later, body camera evidence finds Soukup altering his Affidavit For Search Warrant, after it was already authorized by Judge Emm-Smith.

43. Specifically, Soukup altered his sworn affidavit with the following deliberate falsehood: "Two separate independent witness statements, who say, they observed Lorre driving around the business approximately ten minutes before deputies arrived." Dispatch evidence verifies that Tim and Allen reported an unknown person to them at the time, as "someone" or "a lady passed out ..."

44. Soukup's Declaration for Probable Cause and Detention stated "Based on my observations of Lorre's behavior, the odor of an alcoholic beverage on her person, and witness statements." To which he later testified at Lorre's Department of Motor Vehicle ("DMV") Administrative Hearing held on July 16, 2015, that he did not rely on any witness statements for evidentiary testing to forcibly take Lorre's blood. The DMV hearing resulted in an Order For Dismissal.

45. Based upon deliberate falsehoods, omissions and, a reckless disregard for the truth, Lorre complains that Soukup acted on a hunch and went so far as altering evidence.

**COUNT I – Unreasonable Search in Violation of the Fourth Amendment**
**(Against Defendant Soukup in his individual capacity and, against**
**Defendant Blyveis in his individual capacity and, against**

**Defendant McNeil in his official and individual capacities and,**

**Defendant Lyon County.)**

46. Body camera evidence does not support Soukup's Declaration for Probable Cause and Detention and, Application for Search Warrant, because Greg never said the following words written by Soukup: "Upon asking a second time, Greg stated Lorre had driven the Subaru around the property, while intoxicated, before he was able to stop her and remove the keys from the ignition."

47. Additionally, Soukup falsely declared "Deputy Sam Blyveis, who was assisting, obtained two separate written statements from independent witness, who stated they observed Lorre driving …" Their statements did not state Lorre was driving.

48. Deputies Soukup and Blyveis did not see a crime being committed rather they arrested Lorre with a mere hunch.

49. In fact, there was no probable cause to arrest Lorre. Clearly, there was a failure to investigate innocence as well as guilt. Verifiable evidence shows that Soukup and Blyveis deliberately ignored the facts and circumstances available to them on scene. Without probable cause their actions were dishonest, oppressive, and with a reckless disregard of Lorre's constitutional and statutory rights.

50. Soukup arrested Lorre in retaliation for her refusal to answer questions, perform Field Sobriety Tests, and submit to Evidentiary Testing of her blood.

51. Soukup and Blyveis acted under color of state law when both of them forcibly removed Lorre from her lawfully parked vehicle.

52. To follow, Soukup was the Affiant to an alleged crime of DUI that he never saw being committed. Furthermore, his Affidavit did not give the names of the witnesses in support thereof, to which Judge Emm-Smith was mislead from this omission of a material element. Lorre complains that the search warrant was invalid causing her blood to be forcibly seized in violation of the Fourth Amendment with damages in an amount to be proved at trial.

///

53. Blyveis did not witness Lorre commit a crime. In fact, he fabricated evidence to effect an arrest of Lorre.
54. Moreover, McNeil is responsible for creating and executing training programs for deputies, and for supervising deputies in the execution of their duties.

## COUNT II – False Imprisonment
### (Against All Defendants)

55. Soukup intentionally confined and restrained Lorre against her will by using force with the use of handcuffs, then strapping her to a chair to forcibly take her blood.
56. Without probable cause and, a disregard of the truth, Soukup's Declaration of Probable Cause and Affidavit For Search Warrant underlines false evidence obtained while "Blyveis, who was assisting, obtained two separate written statements from independent witness, who stated they observed Lorre driving …"
57. As a direct result of Soukup and Blyveis's actions, Lorre has suffered harm and damages in an amount to be proved at trial.
58. Moreover, McNeil is ultimately responsible for the actions of his deputies who were acting within the scope and course of their employment when Lorre was arrested without legal justification. McNeil is therefore liable to Lorre by virtual of *respondeat superior*.
59. Lyon County is Soukup and was Byveis's employer. They were acting within the scope and course of their employment when Lorre was arrested without any legal justification. Lyon County is therefore liable to Lorre by virtual of *respondeat superior*.

## COUNT III – Intentional Infliction of Emotional Distress upon Lorre
### (Against All Defendants)

60. Soukup intentionally, dishonestly, and forcibly seized Lorre's blood without any legal justification.
61. As a direct result of Soukup and Blyveis's intentional and unlawful actions to effect an arrest, Lorre has suffered harm and emotional damages in an amount to be proved at trial.
62. Defendant McNeil is Deputies Soukup and was Blyveis's supervisor. The Deputies were acting within the scope and course of their employment when Lorre was forcibly and

unlawfully removed from her parked vehicle. And, Soukup forcibly and unlawfully seized Lorre's blood without legal justification. McNeil is therefore liable to Lorre by virtual of *respondeat superior*.

63. Defendant Lyon County is Soukup and was Blyveis's employer. Both deputies were acting within the scope and course of their employment when they forcibly removed Lorre from her vehicle; and, when Soukup forcibly removed her blood against her will. Lyon County is therefore liable to Lorre by virtual of *respondeat superior*.

### COUNT IV – Battery (Against All Defendants)

64. Soukup intentionally, dishonestly, and forcibly seized Lorre's blood without any legal justification.

65. Soukup physically placed handcuffs on Lorre and principally arrested her for Obstruction and Delaying his investigation of a possible intoxicated driver. Soukup rather truly arrested her with a hunch that is not a discretionary act.

66. A hunch does not justify Soukup's dishonest and unlawful actions.

67. Furthermore, Blyveis's Supplemental Sheriff Deputy's Report offers fabricated statements made to effect an arrest of Lorre. Thus, Blyveis is not trustworthy or credible.

67. As a direct result of Soukup's actions and, Blyveis who was assisting, Lorre has suffered harm and emotional damages in an amount to be proved at trial.

68. Defendant McNeil is Deputies Soukup and was Blyveis's supervisor. The Deputies were acting within the scope and course of their employment when Lorre was forcibly and unlawfully removed from her parked vehicle. And, Soukup forcibly and unlawfully seized Lorre's blood without legal justification. McNeil is therefore liable to Lorre by virtual of *respondeat superior*.

69. Defendant Lyon County is Deputies Soukup and was Blyveis's employer. Both deputies were acting within the scope and course of their employment when they forcibly removed Lorre from her vehicle. Then, Soukup forcibly seized Lorre's blood against her will. Lyon County is therefore liable to Lorre by virtual of *respondeat superior*.

**WHEREFORE**, Plaintiff prays the Court for the following relief:

1. For compensatory damages in an amount to be proved at trial;
2. For punitive damages in an amount sufficient to punish All Defendants and deter others from engaging in similar conduct in the future.
3. For declaratory relief that Soukup violated Lorre's constitutional rights by unlawfully and forcibly seizing and searching her blood in violation of the Fourth Amendment. And, that "Blyveis, who assisted" is held accountable for the unlawful arrest of Lorre in violation of the Fourth Amendment.
4. For prospective injunctive relief against all Defendants, requiring them to enact and implement policies and procedures to ensure all deputies are trained with regard to the Fourth Amendment in the seizure of a person's blood for evidentiary testing that a crime has been committed.
5. For such further and other relief as the Court deems just.

DATED this 8th day of September, 2017.

_____
LORRE ANN KANTZ, In Pro Se
9790 US Highway 50
Stagecoach, Nevada 89429
Telephone: (775) 315-9885